**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

JEFFERY COZORT,

               Plaintiff,

v.                                CIVIL ACTION NO.   5:12-cv-05927

SELCO CONSTRUCTION SERVICES,
INC., et al.,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Deal Brothers Consulting, LLC's Motion for Partial Summary Judgment on Its Cross-Claim Against the Defendant Cleco Corporation* (Document 193), attached exhibits, supporting memorandum (Document 194), *Cleco Corporation's Response to Deal Brothers Contracting, LLC's Motion for Partial Summary Judgment on Its Cross-Claim* (Document 197), attached exhibits, and *Deal Brothers Reply to Cleco Corporation's Response to Deal Brothers Contracting, LLC's Motion for Partial Summary Judgment on Its Cross-Claim* (Document 202).  The Court has also reviewed the *Motion of Cleco Corporation for Partial Summary Judgment on Cross-Claim Against Selco Construction Services, Inc.* (Document 198), attached exhibits, supporting memorandum (Document 199), *Selco Construction Services, Inc.'s Response to Cleco Corporation's Motion for Partial Summary Judgment on Its Cross-Claim* (Document 204), attached exhibits, and Cleco's *Reply to Selco Construction Services Inc.'s Response to Cleco Corporation's Motion for Partial Summary Judgment on Cross-Claim*

(Document 205), and attached exhibits.   Finally, the Court has reviewed *Vitruvian Exploration, LLC and Penn Virginia Oil and Gas's Motion for Partial Summary Judgment on Its Cross-Claim Against Cleco Corporation* (Document 206), supporting memorandum (Document 207), attached exhibits,[1] *Defendant Pinpoint Drilling and Directional Services, LLC's Joinder in Vitruvian Exploration, LLC, and Penn Virginia Oil & Gas's Motion for Partial Summary Judgment on Its Cross-Claim Against Cleco Corporation* (Document 208), the *Response of Cleco Corporation to Motion for Partial Summary Judgment of Vitruvian Exploration, LLC and Penn Virginia Oil and Gas and Pinpoint Drilling and Directional Services, LLC's Joinder in Said Motion* (Document 209), attached exhibits, the *Reply Brief in Support of Penn Virginia Oil & Gas and Vitruvian Exploration LLC's Motion for Partial Summary Judgment* (Document 210), and attached exhibits. For the reasons stated herein, the Court finds that each motion for summary judgment should be granted.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Jeffrey Cozort initiated this action with a *Complaint* (Document 1-2) filed in the Circuit Court of Wyoming County, West Virginia, on July 11, 2012.   Mr. Cozort was employed by Selco Construction Services to do work on gas well sites.   He alleged that he was instructed to climb to the top of a tank and check the water level.   (Compl., ¶ 11.)   When he turned on his flashlight, there was an explosion that blew him off the tank and caused serious injuries.   (*Id.*, ¶ 13.)

The Court received notification on March 4, 2014 that Mr. Cozort's claims against Selco had settled.   (Agreed Order of Partial Dismissal, Document 200.)   In its response to the motions

---

[1] The Court notes that Local Rule of Civil Procedure 7.1(a) requires that "[a]ll exhibits in support of a motion shall be attached to the motion, not the supporting memorandum."   With no objection posed, the Court has not excluded these exhibits from consideration.

for partial summary judgment by Deal Brothers, Vitruvian, Penn Virginia, and Pinpoint Drilling,

Cleco indicated that it had settled "all plaintiff's claims for the non-employer defendants."   (*See*

Jan. 31, 2014 Tabit Email, att'd as Ex. A to Cleco's Resp. to Deal Bros.' Mot., Document 197-1.)

The remaining dispute concerns indemnification agreements between the various defendants, all

entities that owned, operated, or owned permits for the site, or that contracted or sub-contracted

work on the site.   The parties all adopted Deal Brothers' description of the party relationships:

> Penn-Virginia Oil & Gas Corporation, the permit holders, and CDX
> Gas, LLC, which later changed its name to Vitruvian Exploration,
> LLC, the developer, entered into an agreement to produce gas in
> certain areas of Southern West Virginia.   Cleco and Vitruvian
> entered into a Master Service Contract ("the Contract") with
> Vitruvian for Cleco to provide services as to those well sites.   Cleco
> sub-contracted with Selco Construction Services, Inc. to perform at
> least some portion of this work for Vitruvian and Selco employed
> Plaintiff for that purpose.   Vitruvian separately contracted with
> Deal Brothers to provide an onsite representative for Vitruvian.

(Deal Bro.s' Mem. at 2) (internal citations omitted.)

Selco, the Plaintiff's employer and Cleco's subcontractor, agreed to indemnify Cleco in

accordance with the following contract language:

> Regardless of its designation as an "additional insured," or its
> inclusion as a beneficiary under any performance or payment bonds,
> the Subcontractor [Selco] agrees to hold the contractor [Cleco]
> harmless, without limitation, from any and all claim, damage,
> causes of action, costs, expenses, damage, or other charges which
> may be incurred through any action of omissions of the
> Subcontractor, or any of its employees, agents, designees, or others.
> To the extent that any person, firm or corporation may attempt to
> make a claim against the Contractor, for any act or omission,
> whether intentional or otherwise, of the Subcontractor, or attempt to
> claim through the Subcontractor directly against the Contractor, the
> Subcontractor shall indemnify and hold the Contractor harmless for
> any such claims or amounts.   The obligations contained herein
> shall include the obligation to contest or defend such claims on its
> own behalf, or in furtherance of the obligations created by this

>Agreement, as well as to reimburse the Contractor for any attorney's fees, Court costs, or monetary damages it may suffer as a consequence of a breach of this subparagraph, or of any other subparagraph, paragraph or provision contained herein. Notwithstanding any other applicable or modified statute of limitations, this obligation upon the subcontractor shall exist for a period of five (5) years after the final date of acceptance of the project, as a whole, by the Owner.

(Subcontract Agreement, ¶ 11, att'd as Ex. A to Selco's Resp., Document 204-1.)

Cleco, in turn, agreed to indemnify "CDX Group," which by definition included "CDX [now Vitruvian], subcontractors of CDX, and their respective directors, officers, employees, representatives, agents, business invitees and assignees."   (Master Service Contract, § 2.3, att'd as Ex. A to Deal Bros.' Mot., Document 193-1.)  Penn Virginia, Vitruvian, Pinpoint Drilling, and Deal Brothers are all part of "CDX Group."   The indemnification agreement provides:

>Contractor [Cleco] hereby agrees to release, defend, indemnify and hold the CDX Group harmless from and against any and all claims, demands, and causes of action of every kind and character (including without limitation, fines, penalties, remedial obligations, court costs and reasonable attorneys' fees, including attorneys' fees incurred in the enforcement of this indemnity) (hereafter collectively referred to as the Indemnifiable Claims") arising out of, without limitation, bodily injury and/or death of any one or more members of the Contractor Group [defined to include Cleco and any affiliates and subcontractors], and/or loss of or damage to property or interests in property of any one or more members of the Contractor Group in any manner incident to, connected with, or arising out of the performance of the Work; provided, however, that such bodily injury, death, loss of or damage to property results in whole or in party, from negligence, strict liability, or other act and/or omission of any one or more members of the Contractor Group.

4

(*Id*. at § 10.1.1.)   Following the settlement of the Plaintiff's claims, Cleco emailed counsel for

Penn Virginia, Vitruvian, Pinpoint, and Deal Brothers, inviting the submission of "invoices for

fees and costs" directly to its insurer.   (Jan. 31, 2014 Tabit Email.)

## II.     STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that

"[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P.

56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v.*

*Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).   A "material fact" is a fact that could

affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v.*

*Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).   A "genuine issue" concerning

a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in

the nonmoving party's favor.   *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News &*

*Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material

fact, and that it is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); *Celotex Corp.*,

477 U.S. at 322–23.   When determining whether summary judgment is appropriate, a court must

view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light

most favorable to the nonmoving party.   *Hoschar*, 739 F.3d at 169.   However, the non-moving

party must offer some "concrete evidence from which a reasonable juror could return a verdict in

his favor." *Anderson*, 477 U.S. at 256.   "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).   In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility.   *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986).   If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate.   *Anderson*, 477 U.S. at 250.   If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."   *Celotex*, 477 U.S. at 322–23.

When presented with motions for summary judgment from multiple parties, courts apply the same standard of review.   *Tastee Treats, Inc. v. U.S. Fid. & Guar. Co.*, 2008 WL 2836701 (S.D. W. Va. July 21, 2008) (Johnston, J.) aff'd, 474 F. App'x 101 (4th Cir. 2012).   Courts "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," resolving factual disputes and drawing inferences for the non-moving party as to each motion.   *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted); *see also Monumental Paving & Excavating, Inc. v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).

6

### III.    DISCUSSION

All parties agree that there are no genuine issues of material fact.   Because the Plaintiff's claims have been settled, and the cross-claims relate only to indemnification, few facts, apart from the contracts themselves and their undisputed validity, have been presented.   Both Cleco and Selco have conceded that the respective indemnification clauses apply but dispute their effect. Cleco concedes that "the CDX Master Service Contract states that Cleco 'agrees to release, indemnify and hold the CDX Group harmless…'" and that the indemnification clause is applicable to this case.   (Cleco Resp. to Deal Bros.' Mot., at 3.)   Selco, likewise, agrees that its indemnification clause is applicable to this case, but contends that "it is only obligated to indemnify Cleco and is under no duty or obligation to indemnify those entities seeking indemnity from Cleco."   (Selco's Resp. to Cleco's Mot., at 1.)   Thus, it is not necessary to determine liability as a prerequisite to enforcement of the indemnification clauses, as both Selco and Cleco concede that they owe indemnification in accordance with the respective clauses.

All parties further agree that West Virginia law applies to both contracts.   "In construing the language of an express indemnity contract, the ordinary rules of contract construction apply." Syl. Pt. 4, *VanKirk v. Green Const. Co.*, 466 S.E.2d 782, 783 (W. Va. 1995); *Perrine v. E.I. du Pont de Nemours & Co.*, 694 S.E.2d 815, 841 (W. Va. 2010) (emphasizing the importance of giving effect to the intention of the parties).   Under West Virginia law, courts must first determine whether the language of the contract is clear and unambiguous, or if it is "reasonably susceptible of two different meanings."   *Estate of Tawney v. Columbia Natural Res., LLC*, 633 S.E.2d 22, 28 (W. Va. 2006); *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir. 1993).   Whether a contract is ambiguous is a determination for the court, and "[t]he mere fact that parties do not

7

agree to the construction of a contract does not render it ambiguous." *Berkeley County Public Service Dist. v. Vitro Corp. of America*, 162 S.E.2d 189, 200 (W. Va. 1968).

"A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." *Zimmerer v. Romano*, 223 W. Va. 769, 778, 679 S.E.2d 601, 610 (2009) (quoting   Syl. pt. 1, *Cotiga Development Company v. United Fuel Gas Company,* 147 W.Va. 484, 128 S.E.2d 626 (1963)); *Fraternal Order of Police, Lodge No. 69 v. City of Fairmont*, 196 W. Va. 97, 100, 468 S.E.2d 712, 715 (1996).    "It is also well settled that the words of an agreement should be given their natural and ordinary meaning, because the parties presumably used the words in the sense in which they were generally understood." *Bennett v. Dove*, 277 S.E.2d 617, 618-19 (W. Va. 1981).   A court may not use interpretation, construction, or extrinsic evidence to conceive any intention or obligation that contradicts the plain meaning of an unambiguous agreement.   *See Fifth Third Bank v. McClure Properties*, *Inc.*, 724 F.Supp.2d 598, 605 (S. D. W. Va. 2010) (Chambers, J.); *see also Haynes v. DaimlerChrysler Corp.*, 720 S.E.2d 564 (W. Va. 2011) ("It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed" in an unambiguous contract.).   Upon finding a contract to be unambiguous, the court "may…properly interpret that contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue." *Goodman*, 7 F.3d at 1126.

If the court determines that a contract is ambiguous, it should consider extrinsic facts "together with reasonable inferences extractable therefrom . . . to reveal the parties' discerned intent." *Energy Development Corp. v. Moss*, 591 S.E.2d 135 (W. Va. 2003).   "[I]f the evidence

is, as a matter of law, dispositive of the interpretative issue," then summary judgment of the ambiguous contract is appropriate. *Goodman*, 7 F.3d at 1126. If the contract is ambiguous and extrinsic evidence reveals that "there is more than one permissible inference as to intent to be drawn from the language employed, the question of the parties' actual intention is a triable issue of fact." *Atalla v. Abdul-Baki*, 976 F.2d 189, 192 (4th Cir. 1992) (citations and quotations omitted). "An ambiguous contract that cannot be resolved by credible, unambiguous, extrinsic evidence discloses genuine issues of material fact," rendering summary judgment inappropriate. *Sempione v. Provident Bank*, 75 F.3d 951, 959 (4th Cir. 1996).

A. *Cleco's Motion for Partial Summary Judgment on Cross-Claim Against Selco Construction Services, Inc.*

Cleco asserts that "Defendant Selco Construction Services, Inc. agreed to hold Cleco harmless and indemnify it. Moreover, Defendant Selco Construction Services, Inc. agreed to indemnify Cleco with regard to indemnity claims *others* made against Cleco." (Cleco Mot. at 1.) Penn Virginia, Vitruvian, Pinpoint Drilling, and Deal Brothers have all presented indemnity claims against Cleco based on the same incident for which Cleco seeks indemnification from Selco. Selco agrees that it must hold harmless and indemnify *Cleco*. It argues, however, that "[n]o other entity is referenced, by name or otherwise, in relation to the express and unambiguous duty of Selco to indemnify Cleco." (Selco Resp. to Cleco's Mot. at 4.) In addition, Selco contends, West Virginia law holds a presumption that contracting parties did not intend the contract to inure to the benefit of third parties absent express provisions to the contrary. (*Id.* at 5–6.) Cleco reiterates that the clear language of the indemnification clause, as well as the intent of the parties, requires Selco to indemnify Cleco with respect to any claim brought against Cleco by

9

"any person, form or corporation" for "any act or omission whether intentional or otherwise." (*Id.* at 3, citing Subcontract Agreement ¶ 11.)

In addition to indemnification, the Subcontract Agreement required Selco to "include [Cleco] as an Additional Insured" on each of its insurance policies, "including its Comprehensive General Liability and Umbrella policies."  (Subcontract Agreement, ¶ 6.D.)  Selco's insurance policy required that the policy holder have written contracts with any "additional insureds," agreeing to add them to the policy.  (Selco Resp. to Cleco's Mot. at 7.)  Selco therefore argues that "there is not a signed written agreement between Selco and any of these other entities/parties wherein the written agreement specifies that said entities/parties must be added to Selco's insurance policy as "additional insureds."  (*Id.* at 8.)  Cleco responds that it is "not only an 'additional insured'" but also "the holder of a contract that is an 'insured contract.'"  (Cleco's Reply to Selco's Resp. at 5.)  Cleco therefore asserts that it 'stands in the same shoes' as the named insured.  (*Id.*) (citing *Marlin v. Wetzel Co. Bd. Of Educ.*, 569 S.E.2d 462, 469 (W.Va. 2002.))  Further, Cleco argues, because "Cleco's indemnitees also had 'insured contracts' with Cleco, an additional insured, [they] are also entitled to coverage under the policy."  (*Id.*)

The Court finds the language of the Subcontract Agreement and its indemnification clause to be clear and unambiguous.   Selco agreed to hold Cleco harmless

> from any and all claim, damage, causes of action, costs, expenses, damage, or other charges which may be incurred through any action of omissions of the Subcontractor, or any of its employees, agents, designees, or others.   To the extent that any person, firm or corporation may attempt to make a claim against the contractor, for any act or omission, whether intentional or otherwise, the Subcontractor shall indemnify and hold the Contractor harmless for any such claim or amounts.

(Subcontract Agreement, ¶ 11.)   The Subcontract Agreement further specifies that Selco's obligations include the obligation to defend any covered claims and to reimburse Cleco for relevant fees and costs.   (*Id.*)   As applied to the facts of this case, Selco has agreed to indemnify Cleco with respect to any claims, costs, expenses, etc., arising from Selco's acts or omissions.   By admitting that the indemnity clause applies to Cleco's direct claims, Selco has essentially conceded liability.   Penn Virginia, Vitruvian, Pinpoint Drilling, and Deal Brothers' indemnification claims against Cleco were all incurred as a result of the same accident and injury for which Selco admits it must indemnify Cleco.   The other companies' indemnification claims against Cleco constitute claims incurred through the same acts or omissions as the Plaintiff's claims against Cleco and associated defense costs.   Selco must indemnify Cleco for *all* claims arising out of the Plaintiff's accident, including the indemnification claims of the other companies. Therefore, partial summary judgment must be granted in Cleco's favor as to its cross-claim for indemnification.

As discussed above, Cleco and Selco dispute the interpretation of insurance coverage provisions in both the Subcontract Agreement and the insurance policy.   The indemnification clause applies without regard to insurance coverage.   (Subcontract Agreement, ¶ 11.)   Selco's insurer, Selective Way Insurance Company, is not a party to this case, and any dispute regarding its obligations to provide coverage for the indemnification claims brought against either Cleco or Selco is not properly before the Court.   The question before the Court is whether Selco must indemnify Cleco as to the indemnification claims presented by other parties related to Mr. Cozort's injury and lawsuit.   The Court has found that it must.   Any dispute regarding insurance coverage will be between Selco and Selective Way.

11

B.  *Deal Brothers, Vitruvian, Penn Virginia, and Pinpoint Drillings's Motions for Partial Summary Judgment on Cross-Claims Against Cleco*

Motions for partial summary judgment on cross claims were filed by Deal Brothers, followed by Vitruvian and Penn Virginia.  Pinpoint Drilling then joined in Vitruvian and Penn Virginia's motion.  Each company is undisputedly part of the "CDX Group" as defined in the Master Service Contract.[2]  Vitruvian, previously known as CDX, had already honored its indemnification agreement with Pinpoint Drilling and Penn Virginia.  Cleco does not dispute that the indemnification clause applies to all companies in the CDX Group.  Instead, Cleco argues that the issue is moot because it informed counsel for all involved companies that it had settled the non-employer claims and invited submission of claimed costs and fees on January 31, 2014.  (Jan. 31, 2014 Tabit Email.)  Relatedly, Cleco asserts that "the fees and costs incurred in conjunction with Cleco's co-Defendants' indemnification claims, including the instant motion[s] for summary judgment, *after* the January 31, 2013, e-mail must be disregarded as there was nothing to "enforce."  (Cleco Resp. to Deal Bros.' Mot. at 2, fn 1.)  Cleco argues that it is entitled to review invoices for fees and costs incurred in the defense of this litigation for reasonableness.  (*Id.* at 3–4.)  Cleco further responds by again urging the Court to grant its motion for summary judgment against Selco, which, as the Court determined, is ultimately liable for CDX Group's indemnification claims.  (Cleco Resp. to Vitruvian et al. Mot. at 4.)  CDX Group, in turn, argues that the question is not moot until they receive reimbursement and their obligations to defend this case officially end.[3]  (Deal Bros.' Reply at ¶¶ 1–2; Vitruvian Reply at 3.)  Further, they assert

---

2 Though the arguments presented in the motions differ somewhat, all CDX Group members share the same legal position with respect to indemnification, and the Court will refer to all arguments presented by all members of the CDX Group jointly.
3 Deal Brothers' points out that Ms. Tabit's email is the only information it has received regarding the settlement of

that the existence of Cleco's indemnity claim against Selco "does not change Cleco's direct obligations under the Master Service Agreement."   (Vitruvian Reply at 2.)

The parties generally agree as to the law and the applicability of the indemnification clause contained in the Master Service Agreement.   The only dispute seems to be whether a ruling from the Court is needed, essentially to preserve the interests of the CDX Group pending final approval and payment of all claims.   The Court finds that the CDX Group claims are not moot, as, based on the information currently available to the Court, they have yet to receive the relief they seek. Defendants cannot escape litigation and court enforcement of a contract simply by agreeing that the plaintiff is entitled to relief, without actually providing that relief.   The partial motions for summary judgment filed by CDX Group were a reasonable and prudent method of preserving their rights before the Court and are subject to reimbursement pursuant to the plain language of the Master Service Agreement.   (*See* Master Service Agreement, § 10.1.1) (including "[reasonable] attorney's fees incurred in the enforcement of this indemnity" are among the costs Cleco agreed to indemnify.)

As the Court found in Section A, *supra*, Selco must indemnify Cleco for the CDX Group's indemnification claims.   Nonetheless, Cleco owes an obligation to the CDX Group directly.[4] The members of CDX Group are entitled to direct recovery from Cleco, regardless of Cleco's ability to pass the obligation on to Selco.   Accordingly, summary judgment in favor of Penn

---

the non-employer claims.   The Court, likewise, has received no official notification that the Plaintiff's claims have been settled against any Defendant other than Selco.

4  Selco could, of course, have assumed the defense of the CDX Group defendants in accordance with its obligation to defend claims against Cleco and could now directly handle the CDX Group indemnification claims.   The CDX Group defendants are not responsible for enforcing Selco's obligation, however, and are entitled to relief from Cleco regardless of Selco's actions.

Virginia, Vitruvian, Pinpoint Drilling, and Deal Brothers as to their cross-claims against Cleco for indemnification is appropriate.

## CONCLUSION

Following careful consideration, for the reasons stated herein, the Court hereby **ORDERS** that the *Motion of Cleco Corporation for Partial Summary Judgment on Cross-Claim Against Selco Construction Services, Inc.* (Document 198) be **GRANTED**, that *Deal Brothers Consulting, LLC's Motion for Partial Summary Judgment on Its Cross-Claim Against the Defendant Cleco Corporation* (Document 193) be **GRANTED**; that *Vitruvian Exploration, LLC and Penn Virginia Oil and Gas's Motion for Partial Summary Judgment on Its Cross-Claim Against Cleco Corporation* (Document 206), and *Defendant Pinpoint Drilling and Directional Services, LLC's Joinder in Vitruvian Exploration, LLC, and Penn Virginia Oil & Gas's Motion for Partial Summary Judgment on Its Cross-Claim Against Cleco Corporation* (Document 208) be **GRANTED.**

The Court has also considered the *Motion for Oral Argument or Other Action* (Document 211) by Deal Brothers.  This memorandum opinion and order should resolve any need for argument, and so the Court **ORDERS** that the *Motion* be **TERMINATED AS MOOT.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:        June 12, 2014

*Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA
14